2003 ME 122

**Peter RAND et al.**

v.

**BATH IRON WORKS CORPORATION.**

Supreme Judicial Court of Maine.

Argued: Sept. 9, 2003.

Decided: Oct. 15, 2003.

Jed Davis (orally), Jim Mitchell and Jed Davis, P.A., Augusta, for plaintiffs.

Christopher D. Nyhan (orally), Jeffrey W. Peters, Preti Flaherty Beliveau Pachios & Haley, Bath, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Peter Rand, Jeffrey Holt, Michael Lajoie, Clinton Mason, Garry Appleby, and Adam Towers (the Rand employees) appeal from a judgment entered in the Superior Court (Androscoggin County, *Gorman, J.*) in favor of Bath Iron Works Corporation (BIW) on three counts of the Rand employees' four-count amended complaint alleging intentional fraud, negligent misrepresentation, breach of contract, and seeking punitive damages. The Rand employees contend that, with regard to the intentional fraud claim, (1) the evidence compelled findings contrary to the findings made by the Superior Court, and (2) the Superior Court improperly applied fraudulent misrepresentation analysis; with regard to the negligent misrepresentation claim, (1) the evidence compelled findings contrary to the findings made by the Superior Court, and (2) that the Superior Court misstated and improperly applied negligent misrepresentation analysis; and, with regard to the punitive damages claim, the evidence compelled findings contrary to the findings made by the Superior Court. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] In late summer of 1995, BIW decided to hire approximately 100 electricians and pipe fitters to meet the demands of its production schedules. The Rand employees applied for these positions and, in September 1995, interviewed individually with two-person teams comprised of a member of BIW management and a union representative.

[¶ 3] At the time of the interviews, BIW and its unionized employees were subject to a collective bargaining agreement that contained a "no layoff" provision, which protected those employees who were working at BIW on August 22, 1994. Any new employees would have to join the union,

but they would not be covered by the provision.

[¶ 4] At least four of the six Rand employees recalled being told in the interview that the "no layoff" provision would not apply to them, and all six knew before starting work that it would not apply to them. None of the Rand employees was promised that he would have a job for a specific period of time. Each did recall, however, that he was told there would be work for years to come.

[¶ 5] The Rand employees accepted jobs with BIW in October or November of 1995. None of them signed an employment contract. All were laid off in early 1996.

[¶ 6] In June 1999, the Rand employees filed a complaint against BIW. Shortly thereafter, they filed an amended complaint, requesting class certification; alleging fraud, negligent misrepresentation, and breach of contract; and seeking declaratory and injunctive relief, and actual and punitive damages. In July 1999, BIW removed the case to the United States District Court. Two years later, in June 2001, the federal court remanded the case back to the state court for lack of subject-matter jurisdiction.

[¶ 7] On August 31, 2001, BIW filed a motion for a summary judgment on all counts of the Rand employees' amended complaint. On February 2, 2002, a summary judgment was granted as to the claim for breach of contract (Count III). The remaining counts were considered during a bench trial that included thirty-two witnesses, numerous exhibits, and seven days of testimony.

[¶ 8] After the hearing, the Superior Court entered a judgment in favor of BIW, finding that the Rand employees failed to prove (1) that BIW made a false representation of the duration of employment offered; (2) that the Rand employees justifi-

ably relied upon promises of long-term work; and (3) that BIW negligently represented the nature of the jobs offered.

## II. DISCUSSION

### A. Intentional Fraud

[¶ 9] To prevail on a claim for intentional fraud, the plaintiff must prove by clear and convincing evidence: (1) that the defendant made a false representation, (2) of a material fact, (3) with knowledge of its falsity or in reckless disregard of whether it is true or false, (4) for the purpose of inducing the plaintiff to act in reliance upon it, and, (5) the plaintiff justifiably relied upon the representation as true and acted upon it to the plaintiff's damage. *See Mariello v. Giguere,* 667 A.2d 588, 590 (Me.1995) (quoting *Guiggey v. Bombardier,* 615 A.2d 1169, 1173 (Me.1992)).

[¶ 10] "The meaning and weight to be given the exhibits and the testimony of the witnesses is for the fact-finder to determine and must be upheld unless clearly erroneous." *Jenkins, Inc. v. Walsh Bros., Inc.,* 2002 ME 168, ¶ 7, 810 A.2d 929, 933. "A factual determination is clearly erroneous only if 'there is no competent evidence in the record to support it.'" *Town of Stonington v. Galilean Gospel Temple,* 1999 ME 2, ¶ 19, 722 A.2d 1269, 1273 (quoting *McGraw v. S.D. Warren Co.,* 656 A.2d 1222, 1224 (Me.1995)). A party bearing the burden of proof at trial can "prevail on a sufficiency of the evidence challenge to a finding that [his] burden has not been met only if [he] demonstrates that a contrary finding is compelled by the evidence." *Westleigh v. Conger,* 2000 ME 134, ¶ 12, 755 A.2d 518, 520.

[¶ 11] The Rand employees contend that the court erred as a matter of law in its fraudulent misrepresentation analysis by improperly determining that the Rand employees' reliance on the false represen-

tations of long-term employment was not justified. BIW asserts that the record evidence supports the trial court's findings, and that the Rand employees' knowledge of the "no layoff" provision must be considered when determining whether the Rand employees were justified in relying on any representations made during the interview. A careful reading of the trial court's well-reasoned order, however, indicates that the trial court did not determine that (assuming for purposes of its "justifiable reliance" analysis that the Rand employees had proved that BIW had made false representations) the Rand employees' reliance on BIW's false representations was unjustified. Instead, the trial court found that (1) the BIW interviewers represented to the Rand employees that BIW had lots of work for years to come; (2) BIW did not make a false representation of the duration of employment offered; and (3) the Rand employees did not rely on general statements of the amount of work at BIW as promises of long-term work. The trial court did not determine, as a matter of law, that the Rand employees' reliance was not justified. Rather, the trial court found, as a matter of fact, that the Rand employees did not rely (justifiably or otherwise) on BIW's generalized representations as specific promises of long-term work. The record contains adequate, competent evidence supporting this finding and the court was not compelled to find otherwise.

## B. Negligent Misrepresentation

[¶ 12] The trial court concluded that "[t]he evidence presented in [the] case did not convince [it] that BIW negligently represented the nature of the jobs offered" to the plaintiffs. The Rand employees assert that the court erroneously applied the elements of negligent misrepresentation because they contend the court incorrectly concluded that they had the burden to

prove "that BIW *knew* that it would only need the new employees for two or three months, and then gave false information to the contrary." (emphasis added.) The Rand employees maintain that the tort of negligent misrepresentation only requires them to prove that BIW failed to exercise reasonable competence in supplying the information regarding duration of employment and not, as the court suggested, that BIW knew that it only needed the new employees for a limited time period.

[¶ 13] In *Chapman v. Rideout*, 568 A.2d 829, 830 (Me.1990), we adopted section 552(1) of the RESTATEMENT (SECOND) OF TORTS (1977) as the appropriate standard for negligent misrepresentation claims. Section 552(1)—the substance of which the trial court correctly cited in its decision,— defines negligent misrepresentation as follows:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, *if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

RESTATEMENT (SECOND) OF TORTS § 552(1) (emphasis added); *see also Perry v. H.O. Perry & Son Co.*, 1998 ME 131, ¶ 5, 711 A.2d 1303, 1305 (reaffirming our previous adoption of section 552(1)). Comment a to section 552(1) observes that liability for negligent misrepresentation is "more restricted than that for fraudulent misrepresentation." RESTATEMENT (SECOND) OF TORTS § 552(1) cmt. a. Liability only attaches if, when communicating the information, the defendant fails to exercise the care or competence of a reasonable person

under like circumstances. *Id.* cmt. e. This inquiry is a question for the fact-finder. *Id.* Accordingly, unlike fraud or deceit, the defendant's knowledge is largely immaterial for negligent misrepresentation, and the fact-finder's primary task is to ascertain whether the defendant's conduct was reasonable.

[¶ 14] The trial court found that "the evidence presented in this case did not convince the court that BIW negligently represented the nature of the jobs offered." The record contains adequate, competent evidence to support the trial court's findings. The trial court's findings are not clearly erroneous.

## C. Punitive Damages

[¶ 15] Our decision in *Tuttle v. Raymond*, 494 A.2d 1353 (Me.1985) governs the application of common law punitive damages. Punitive damages "serve the useful purposes of expressing society's disapproval of intolerable conduct and deterring such conduct where no other remedy would suffice." *Tuttle*, 494 A.2d at 1355 (quoting Jane Mallor & Barry Roberts, *Punitive Damages: Toward a Principled Approach*, 31 Hastings L.J. 639 (1980)). As such, punitive damages may only be awarded in situations when the fact-finder has also awarded compensatory damages. *Zemero Corp. v. Hall*, 2003 ME 111, ¶ 11, 831 A.2d 413.

The entry is:

Judgment affirmed.